DAVID LOY, Cal. Bar No. 229235
ANN CAPPETTA, Cal. Bar No. 354079
FIRST AMENDMENT COALITION
534 4th Street, Suite B
San Rafael, CA 94901-3334
Telephone:   415.460.5060
Email        dloy@firstamendmentcoalition.org
             acappetta@firstamendmentcoalition.org

Attorneys for Plaintiff JOSE ANTONIO GARCIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ANTONIO GARCIA,<br><br>       Plaintiff,<br><br>   v.<br><br>COUNTY OF ALAMEDA and YESENIA SANCHEZ, Sheriff of Alameda County, in her official capacity,<br><br>       Defendants. | Case No. 4:24-cv-3997<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND NOMINAL DAMAGES** |

## INTRODUCTION

1.      The First Amendment guarantees the right to observe, record, and report on matters of public concern in public places.

2.      The public depends on robust reporting by a free press to guarantee the unimpeded flow of information necessary for an engaged community to discuss and debate issues of public interest and petition the government for enforcement or improvement of the law.

3.      In particular, the people have a compelling interest in timely, accurate, and complete reporting on matters relating to public safety.

4.      When reporting on such matters, journalists may observe, record, or report on persons engaging in unlawful conduct in public places.

5.     Others may also observe, record, or report on such conduct, for example residents or bystanders who wish to expose or protest the conduct by alerting the press, posting to the internet or social media, reporting to law enforcement, or petitioning the government.

6.     The observation or recording of such events is speech covered by the First Amendment, which protects speech about or reporting on unlawful conduct.

7.     Journalism that reports on unlawful conduct serves the compelling interest in informing the public about the causes and consequences of such conduct and contributing to important public policy debates on whether or to what extent such conduct should be criminalized or punished.

8.     The County of Alameda ("County") has adopted Ordinance No. 2023-31 ("Ordinance"), which criminalizes the mere observation of "sideshow events" occurring on public streets.

9.     In doing so, the Ordinance criminalizes journalism by making it illegal to report on or record such events.

10.    The Ordinance violates the First Amendment because it is a content-based restriction on protected speech that is not the least restrictive means to serve a compelling governmental interest.

11.    While the government may have compelling interests in preventing or responding to unlawful and dangerous conduct of drivers who participate in sideshows or others who engage in acts such as vandalism or violence, it may not punish the protected speech of reporters or community members who observe, record, or report on such events to inform and educate the public. The government may and should serve its interests with laws directly addressing unlawful conduct itself instead of punishing protected speech.

12.    The County may thus enforce laws against unlawful and dangerous conduct, but it may not criminalize journalism or punish observing, reporting on, or recording events of public concern, which is speech protected by the First Amendment.

13.    As an award-winning reporter who specializes in road safety, transportation, and public health, Plaintiff Jose Antonio Garcia brings this action to prevent the County from

enforcing the Ordinance against him and violating his First Amendment rights to observe, record, and report on sideshows as events of public concern occurring in public places.

## JURISDICTION AND VENUE

14. The Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the United States Constitution and 42 U.S.C. § 1983.

15. The Court has supplemental jurisdiction over Garcia's state law claims under 28 U.S.C. § 1367(a) because they form part of the same case or controversy as Garcia's federal claims.

16. The Court may grant declaratory and injunctive relief for constitutional violations pursuant to 28 U.S.C. § 2201 and Federal Rules of Civil Procedure 57 and 65.

17. Venue is proper in this district under 28 U.S.C. § 1391(b) because the events that give rise to this action occurred within this district.

18. The Court has personal jurisdiction over Defendants, because the County is located within the State of California and this district.

## DIVISIONAL ASSIGNMENT

19. The events giving rise to the claims stated herein occurred substantially or fully in the County of Alameda.

20. Garcia is a resident of Alameda County and serves Oakland and surrounding communities, and the County's administrative offices are located in the City of Oakland, so assignment of this case to the Oakland Division of the Northern District of California is appropriate pursuant to Civil Local Rule 3-2(c)–(d).

## PARTIES

21. Plaintiff Jose Antonio Garcia is an award-winning reporter who writes on the road safety, transportation, and public health beat for *The Oaklandside*. He writes under his maternal family surname, "Jose Fermoso," and will be referred to by this professional pen name in the remainder of this Complaint.

22.     Fermoso is a "citizen of the United States or other person within the jurisdiction" of the County under 42 U.S.C. § 1983, and "under color of [an] ordinance," the County caused and is causing Fermoso to be subjected "to the deprivation of [] rights . . . secured by the Constitution."

23.     Fermoso has standing to bring a pre-enforcement challenge the Ordinance because he intends to personally observe, record, and report on sideshows from within 200 feet of the locations where they occur, including from locations within unincorporated parts of the County, but has been chilled from engaging in this constitutionally protected speech due to a credible threat of citation, arrest, or prosecution under the Ordinance.

24.     The County is a political subdivision of the State of California, organized and existing under the Constitution and laws of the State of California. It is a person under 42 U.S.C. § 1983 and can sue and be sued in its own name.

25.     Yesenia Sanchez is the Sheriff for the County and responsible for enforcing the Ordinance. She is sued in her official capacity.

**FACTS**

**Fermoso's Background and Previous Reporting**

26.     Fermoso is the road safety, transportation, and public health beat reporter for *The Oaklandside*, a nonprofit journalism platform founded in June 2020, committed to rooting its reporting in the needs and wants of diverse communities across the City of Oakland and amplifying community voices.

27.     Fermoso wrote for *The Oaklandside* as a freelance reporter starting in June 2020 and has held his position at *The Oaklandside* since September 2021, when he was awarded the Knight-Wallace Reporting Fellowship through the University of Michigan for his reporting project, "Oakland's Deadly Roadways: Reckoning with Inequities in Urban Design for The Oaklandside."

28.     Fermoso was awarded the Knight-Wallace Reporting Fellowship based in part on his previous freelance reporting published in *The Oaklandside* and in other major news publications as a staff writer or freelance reporter including for *The Guardian (UK)*, the *Silicon Valley Business Journal*, and the *New York Times* best-selling nonfiction book, *Jony Ive: The*

*Genius Behind Apple's Greatest Products*. The Knight-Wallace Reporting Fellowship is considered among the three most prestigious reporting fellowships in the United States.

29.    Fermoso reports on road safety matters both within the City of Oakland and in parts of unincorporated Alameda County, among other areas, when issues important to Oakland communities arise outside the geographical boundaries of the City.

30.    As Fermoso has reported, a "sideshow" is:

A controversial event where drivers take over city intersections with their cars as they skid in circles while performing stunts. Sideshows can last seconds or hours at a time, and they can be performed by a single individual without a crowd or by multiple people with hundreds of onlookers rallying them on. Some people have defended sideshows as an important outlet for youthful rebellion while others have noted that they often, especially in recent years, are accompanied by gun violence and rowdy behavior.

A true and correct excerpt of the article containing this reporting is attached hereto as **Exhibit 1** and is available at https://oaklandside.org/2023/11/30/road-safety-transportation-infrastructure-glossary-terms-definitions/#h-sideshows.

31.    Fermoso sees his role as neutrally informing Oakland communities on the facts and circumstances of sideshows, so that they are empowered with the knowledge necessary to understand the history of and problems associated with these events and may make fact-based decisions regarding sideshow attendance, policing, and policy reform.

32.    On May 30, 2023, Fermoso published an article entitled "Map: These Oakland intersections are hotspots for sideshows" ("Mapping Article").  In reporting this article, Fermoso and his co-author mapped every report of a sideshow made to Oakland police from January 2019 to November 2022. A true and correct copy of the Mapping Article is attached hereto as **Exhibit 2** and is available at https://oaklandside.org/2023/05/30/oakland-sideshow-hotspots-map/.

33.    As reported in the Mapping Article, Fermoso found not only that sideshows occur throughout Oakland and the County, but also that the intersection most frequently taken over by sideshows, according to reports to police, was Keller Avenue and Skyline Boulevard, with 55 days of sideshow activity reported between January 2019 and November 2022.

34.     The intersection of Keller Avenue and Skyline Boulevard is on the border between the City of Oakland and unincorporated parts of the County. Sideshows occurring at this intersection are visible, within 200 feet, from areas of unincorporated parts of the County.

35.     While only 55 days of sideshow activities were reported to Oakland Police at the Keller-Skyline intersection from January 2019 to November 2022, Fermoso interviewed Vijoa Lucas, the manager of the Anthony Chabot Equestrian Center, which is in an unincorporated part of the County, about 500 feet from the intersection. As reported in the Mapping Article, Lucas stated that sideshows were happening "nearly every night" at the intersection between 2018 and 2020, and she still hears them "four or five times a month."

36.     Other sideshows Fermoso listed in the Mapping Article occurred directly in unincorporated areas of the County. For example, one day of sideshow activities was reported at the intersection of Grass Valley Road and Skyline Boulevard, as well as at 7861 Redwood Road.

37.     Without reports of sideshows to police, Fermoso would not have been able to report the Mapping Article.

38.     To cover sideshows, it is important to photograph, film, and record audio of the events within 200 feet of the intersections where they occur, to convey adequately detailed visual and auditory context that can enhance readers' comprehension of the matters reported. For example, one image published in the Mapping Article showed cars lining up on 98th Avenue near an East Oakland intersection taken over for a sideshow, giving visual context to how the event impacted traffic.

39.     The public's interest in and response to the Mapping Article was substantial. As of or about June 18, 2024, this article has been viewed approximately 13,000 times.

40.     The public has a compelling interest in reliable and thorough firsthand reporting of sideshows to understand how these events are impacting their communities' traffic, noise, pollution, and safety as they are occurring, and use this information to make fact-based decisions regarding sideshow attendance, policing, and policy reform and advocate for their communities needs and interests.

**Adoption of Ordinance and Alternatives for Addressing Unlawful Conduct**

41.     The Ordinance was adopted as Alameda County Ordinance No. 2023-31 on August 1, 2023, and codified as Chapter 10.40 of the Alameda County Code ("ACC").

42.     The Ordinance applies in unincorporated areas of the County and makes it "unlawful for any person to knowingly be a spectator at a sideshow event conducted on a public street or highway or off-street parking facility" and "unlawful for any person to knowingly be a spectator at the location of preparations for a sideshow event on a public street or highway or off-street parking facility." ACC § 10.40.030(A)–(B).

43.     "Spectator" means "any person who is present at a sideshow event, or the site of the preparations for a sideshow event, for the purpose of viewing, observing, watching, or witnessing the sideshow event as it progresses." *Id.* § 10.40.020.

44.     "Spectator" may include but is not limited to "any person at the location of the sideshow event that may have participated in preparations and/or promoting the sideshow event." *Id.*

45.     A person is "present" at "a sideshow event if that person is within two hundred (200) feet of the location of the sideshow event, or within two hundred (200) feet of the site of the preparations for any sideshow event." *Id.*

46.     "Sideshow" means "an occasion where one or more persons, for the purpose of performing a street race or reckless driving exhibition for one or more spectator(s) either blocks or impedes traffic on a street or highway or impedes access to an off-street parking facility." *Id.*

47.     "Sideshow event" means "a sideshow, street race, or reckless driving exhibition." *Id.*

48.     According to ACC § 10.40.020, "Preparations" for a "sideshow event" include, but are not limited to, certain specified "acts done for the purpose of facilitating, aiding, abetting, encouraging, assisting, or instigating a sideshow event," such as:

          a.     "One or more motor vehicles and persons have arrived at a predetermined location."

b.     "One or more persons have gathered on, or adjacent to, a public street or highway or at an off-street parking facility."

c.     "One or more persons have impeded the free public use of a street or highway, or off-street parking facility by acts, words, or physical barriers."

d.     "One or more motor vehicles have lined up on a public street, highway, or off-street parking facility with motors running."

e.     "One or more drivers is revving a motor vehicle's engine or causing the motor vehicle's tires to spin."

f.     "A person is standing or sitting in a location in the vicinity of a sideshow event to act as a race starter."

49.     According to the Ordinance, "Evidence of prior acts may be admissible to show the propensity of the person to be present at or attend a sideshow event if the prior act or acts occurred within three years of the presently charged offense. These prior acts may always be admissible to show knowledge on the part of the person that a sideshow event was taking place at the time of the presently charged offense. Prior acts are not limited to those that occurred within the unincorporated Alameda County." *Id.* § 10.40.040(B).

50.     Such "prior acts may include, but are not limited to . . . [t]he person charged has previously attended or been a spectator at a sideshow event" and "[t]he person charged was previously present at a location where preparations were being made for any sideshow event or where a sideshow event was in progress." *Id.*

51.     A violation of the Ordinance is "a misdemeanor punishable by imprisonment not exceeding three months or by fine not exceeding one thousand dollars ($1,000.00) or by both." *Id.* § 10.40.050.

52.     Under the Ordinance, the crime of being a "spectator" at a "sideshow" requires no intent to aid, abet, solicit, incite, or conspire to engage in any unlawful conduct. *Id.* §§ 10.40.20–30.

53.     Instead, the Ordinance punishes the mere observation of a sideshow or related preparations, or even mere presence with intent to engage in such observation.

54.    By prohibiting being "present" at a sideshow for purposes of viewing, observing, watching, or witnessing the sideshow, the Ordinance effectively prohibits recording or reporting on the sideshow, because viewing, observing, watching, or witnessing an event is inherently necessary to recording or reporting on it.

55.    The Ordinance thus makes it a crime to engage in the protected speech of observing, recording, and reporting on sideshows or related preparations.

56.    The Ordinance does not prohibit the protected speech of observing, recording, or reporting on other matters or events at the same time and place, and therefore the Ordinance punishes speech based on its content.

57.    The Ordinance criminalizes journalism about matters of public concern related to sideshows by prohibiting reporters from observing, recording, or reporting on them from anywhere within 200 feet of a sideshow or related preparations.

58.    The Ordinance's prohibition of observing a sideshow or related preparations from anywhere within 200 feet of the sideshow or preparations makes it effectively impossible to observe, report on, or record the sideshow or preparations in any meaningful manner.

59.    By making it unlawful merely to be present within 200 feet of a "sideshow event" for the purpose of "viewing, observing, watching, or witnessing the sideshow event as it progresses," *id.* § 10.40.20, the Ordinance violates the First Amendment right to observe, record, or report on such an event, especially to the extent it is unclear how the 200-foot perimeter is measured, given that a "sideshow event" and its "preparations" are inherently fluid.

60.    However it is measured, a 200-foot perimeter is far broader than necessary to address any risks to observers, especially as to observing "preparations," which can include merely the arrival of one or more persons at a given location.

61.    Indeed, one could be "present" within the 200-foot perimeter while observing the sideshow or its preparations from indoors or behind a fence or barrier, further illustrating the excessive breadth of the perimeter.

62.    The Ordinance especially threatens reporters who have previously covered sideshows by making their prior reporting on sideshows admissible evidence of a "prior act"

1  relevant to show "propensity" for observing sideshows or "knowledge" that a sideshow is

2  occurring.

3      63.    The actions involved in conducting a sideshow, such as blocking or impeding

4  traffic, street racing, or reckless driving, are already prohibited by California law, as

5  acknowledged in the Ordinance itself.

6      64.    As admitted in the letter of the Sheriff and President of the Board of Supervisors

7  proposing the Ordinance, "California law already prohibits drivers and passengers from engaging

8  in Sideshow Events by criminalizing illegal street racing and illegal exhibitions of reckless

9  driving." A true and correct copy of this letter is attached as **Exhibit 3**.

10     65.    Existing laws also prohibit the conduct causing alleged problems associated with

11  sideshows that are referred to the Ordinance's findings, such as the "discharge of firearms," Cal.

12  Penal Code § 246.3; driving "under the influence of drugs and alcohol," Cal. Veh. Code. § 23152;

13  littering, Penal Code § 374; "vandalism," *id.* § 594; "harming or destroying" infrastructure or

14  other property, *id.*; blocking or preventing access, Cal. Veh. Code § 22500; "burning rubber tires,"

15  *id.* § 23109; Cal. Health & Safety Code § 41800; and "noise pollution," Cal. Penal Code § 415(2).

16     66.    The County may also adopt alternative laws that address problems associated with

17  sideshows without criminalizing the protected speech of observing and recording sideshows for

18  the purpose of reporting on them.

19     67.    For example, the City of Oakland adopted an ordinance prohibiting the organizing

20  or facilitating of sideshows without making it unlawful for journalists or others to observe, record,

21  and report on them. *See* Oakland, Cal., Code §§ 10.74.010–10.74.090 (2023).

22                  **Ordinance Prevents Fermoso from Reporting on Sideshows**

23     68.    Fermoso planned to personally observe, record, and report on the occurrence of

24  sideshows in Oakland and unincorporated Alameda County, with particular interest in observing,

25  recording, and reporting on sideshows at the most frequently reported intersection of Keller

26  Avenue and Skyline Boulevard.

27     69.    To document and report on these sideshows and provide his readers and viewers

28  with the most accurate account, Fermoso planned such observation and reporting to include audio

and video recording and photographing the intersection and sideshow event from all angles, including from unincorporated parts of the County, within 200 feet of the sideshow or related preparations, to best capture images and audio for purposes of newsgathering and reporting.

70.     However, Fermoso learned that the County had adopted the Ordinance, making it a crime to be a "spectator" at a "sideshow" or related "preparations."

71.     After learning of the Ordinance, Fermoso canceled all future plans to report on-site at sideshows in the unincorporated areas of the County because he reasonably feared citation, arrest, or criminal prosecution under the Ordinance for engaging in such reporting.

72.     Because of his reasonable fear of citation, arrest, or criminal prosecution for observing sideshows, Fermoso has been unable to engage in effective firsthand observation, reporting, and recording of sideshows in the unincorporated areas of the County since the Ordinance was passed.

73.     Observing, recording, and reporting on these events enables the dissemination of critical information to Oakland and County communities, which facilitates more widespread awareness of sideshows and associated problems, policing, and policy.

74.     Fermoso's readers and Oakland communities need and want more news on sideshows, including the kind of reporting he planned before the County enacted the Ordinance.

75.     There are numerous examples of journalism about road safety prompting reform and improvements that have benefitted the public at large. For example, as Fermoso reported in May 2023, *The Oaklandside*'s "impact was reflected in the budget priorities Councilmembers published last month. For the first time in years, all of them prioritized traffic safety by asking for barricades at intersections and sidewalks, hardened medians to stop sideshows, and faster repairs to potholed streets." A true and correct copy of this article is attached hereto as **Exhibit 4** and is available at https://oaklandside.org/2023/05/17/sharing-our-traffic-violence-reporting-castlemont-ousd-high-school-public-health/.

76.     Reporters, including Fermoso, regularly rely on photographs, as well as video and audio recordings, in order to gather news and information and keep the public informed. The making and publication of such documentary materials enhances the accuracy and credibility of

reporting, increases transparency and reader trust, and enriches news stories, allowing reporters to convey more than can be said based on the written word alone.

77.    Without this type of reporting, the documentary evidence that supports it, and the right to observe firsthand, the public is often left only with the limited information police will disclose, which does not describe the full impact of sideshows on communities due to limited law enforcement resources, the public records exemption for investigatory records, Cal. Gov't Code § 7923.600, and underreporting of concerns to police.

78.    Firsthand observation and recording also assist law enforcement in prosecuting crimes that occur at sideshows. For example, NBC Bay Area recently reported on a sideshow in San Jose, including publishing a still from a witness's firsthand recording that depicted a sideshow participant jumping on top of a police patrol car. Alyssa Goard, *San Jose sideshow near Santana Row injures spectator, police officer*, NBC Bay Area (June 16, 2024), https://www.nbcbayarea.com/news/local/south-bay/santana-row-sideshow/3568247/ (last updated June 17, 2024, 4:47 AM). The article reports that police are working to identify the suspects behind the sideshow to ensure they "are prosecuted to the fullest extent the law allows" and indicates "San Jose police are asking if anyone has any video" of "the sideshow to contact them." *Id.*

79.    CBS News Bay Area reported on another June 2024 sideshow at which "[s]tunning video of the incident showed the dangerous scene on the Embarcadero with cars doing donuts surrounding a burning vehicle" while others "launch[ed] fireworks into the sky." Kevin Ko, *San Francisco police chief promises accountability, but so far no arrests in Sunday sideshows*, CBS News Bay Area (June 11, 2024, 5:59 PM) https://www.cbsnews.com/sanfrancisco/news/san-francisco-police-chief-promises-accountability-but-no-arrests-so-far-in-weekend-sideshows/. San Francisco Police Department Chief William Scott "urged the public to call 911 if they ever witness a side show, while also asking witnesses to share videos with police to assist in investigations." *Id.*

80.    Without the right to observe a sideshow, there can be no effective recording or reporting on the event. Without observation or recordings, police may lack evidence to effectively

prosecute sideshow participants, reporters cannot inform their audience on what happens in their communities as effectively, and communities lack reliable information based on which they might advocate for reforms.

## FIRST CLAIM
### 42 U.S.C. § 1983
### First Amendment: Freedom of Speech

81.    The allegations of paragraphs 1 through 80 above are incorporated by reference as though fully set forth herein.

82.    On its face or as applied to Fermoso, the Ordinance violates the Free Speech Clause of the First Amendment by criminalizing protected speech based on its content because it prohibits recording or reporting on a defined topic or subject.

83.    Given that enforcement of existing or potential alternative laws is available to address the problems allegedly associated with sideshows, the Ordinance is not the least restrictive means to address any compelling governmental interest.

84.    Assuming the Ordinance could be treated as content-neutral or otherwise subject to intermediate scrutiny, it violates the Free Speech Clause of the First Amendment on its face or as applied to Fermoso by criminalizing protected speech.

85.    Given that enforcement of existing or potential alternative laws is a readily available alternative to address the problems allegedly associated with sideshows, the Ordinance burdens substantially more speech than necessary to further any significant governmental interests and is far from narrowly tailored to serve any such interests.

86.    By making it unlawful to observe, record, or report on sideshows or related preparations from anywhere within a constantly shifting 200-foot radius, the Ordinance does not leave open ample and adequate alternatives for such observation, recording, or reporting.

## SECOND CLAIM
### 42 U.S.C. § 1983
### First Amendment: Freedom of the Press

87.    The allegations of paragraphs 1 through 80 above are incorporated by reference as though fully set forth herein.

88.     On its face or as applied to Fermoso, the Ordinance violates the Free Press Clause of the First Amendment by criminalizing journalism and making it illegal for Fermoso to engage in newsgathering, recording, and reporting on matters and events of public concern in public places.

**THIRD CLAIM**
**California Constitution, Article I, section 2(a): Liberty of Speech and Press**

89.     The allegations of paragraphs 1 through 80 above are incorporated by reference as though fully set forth herein.

90.     On its face or as applied to Fermoso, the Ordinance violates Article I, section 2(a) of the California Constitution because it unconstitutionally restrains or abridges the liberty of speech or press as a content-based prohibition on speech or criminalization of newsgathering and journalism.

91.     Even if it could be viewed as content-neutral, the Ordinance violates Article I, section 2(a) of the California Constitution on its face or as applied to Fermoso because it unconstitutionally restrains or abridges the liberty of speech or press.

**PRAYER FOR RELIEF**

WHEREFORE, Fermoso respectfully requests the Court to enter judgment against Defendants as follows:

1.     Preliminarily and permanently enjoining Defendants and their officers, agents, servants, employees, and attorneys, and anyone in active concert or participation with any of the foregoing persons, from enforcing the Ordinance against Fermoso;

2.     Declaring the Ordinance to be unconstitutional on its face or as applied to Fermoso's viewing, witnessing, observing, reporting on, and recording of sideshows;

3.     Awarding nominal damages to Fermoso;

4.     Awarding Fermoso costs and attorney fees as authorized by Fed. R. Civ. P. 54, 42 U.S.C. § 1988, and/or any other applicable law;

5.     Awarding other such relief as the Court deems proper.

Dated:  July 2, 2024

FIRST AMENDMENT COALITION

By     _____
                    */s/ David Loy*
                    DAVID LOY
                    ANN CAPPETTA
                    Attorneys for Plaintiff
                    JOSE ANTONIO GARCIA