DAVID LOY, Cal. Bar No. 229235
ANN CAPPETTA, Cal. Bar No. 354079
FIRST AMENDMENT COALITION
534 4th Street, Suite B
San Rafael, CA 94901-3334
Telephone:  415.460.5060
Email:     dloy@firstamendmentcoalition.org
           acappetta@firstamendmentcoalition.org

Attorneys for Plaintiff JOSE ANTONIO GARCIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| JOSE ANTONIO GARCIA,<br><br>                Plaintiff,<br><br>        v.<br><br>COUNTY OF ALAMEDA, and YESENIA SANCHEZ, Sheriff of Alameda County, in her official capacity,<br><br>                Defendants. | Case No. 3:24-cv-03997-RS<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:   September 5, 2024<br>Time:  1:30 p.m.<br>Judge: Honorable Richard Seeborg<br>Ctrm:  Courtroom 3 – 17th Floor |

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ........................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................2

I.      ISSUE PRESENTED ...................................................................................................2

II.     INTRODUCTION.........................................................................................................2

III.    BACKGROUND............................................................................................................3

        A.      Fermoso Covers Sideshows in Unincorporated Alameda County, Where
                Firsthand Reporting and Recording Offer Key Context to Readers. ........................3

        B.      The Ordinance Criminalizes Observing and thus Recording or Reporting on
                Sideshows and Prevents Fermoso from Critical Newsgathering. ...........................4

IV.     LEGAL STANDARD ....................................................................................................6

V.      ARGUMENT .................................................................................................................6

        A.      The Ordinance Likely Violates the First Amendment as a Content-Based
                Restriction on Protected Speech....................................................................................7

                1.      The Ordinance Restricts Access to a Traditional Public Forum and
                        Effectively Criminalizes the Protected Speech of Newsgathering and
                        Recording or Reporting on Events of Public Concern. ....................................7

                2.      The First Amendment Protects Speech About Unlawful Conduct. ...............9

                3.      The Ordinance Is a Content-Based Restriction on Speech As It
                        Prohibits Recording or Reporting on the Defined Topic of
                        Sideshows.........................................................................................................12

                4.      The Ordinance Fails Strict Scrutiny Because the County May Punish
                        the Unlawful Conduct of Engaging in a Sideshow Without
                        Restricting Protected Speech About Sideshows............................................13

        B.      Fermoso Is Suffering Irreparable Harm, and the Balance of Equities and
                Public Interest Favor an Injunction Protecting His First Amendment Rights..........16

        C.      No Bond Should be Required..........................................................................................17

VI.     CONCLUSION ............................................................................................................18

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*ACLU v. Alvarez*
  679 F.3d 583 (7th Cir. 2012)...................................................................................9

*Am. Beverage Ass'n v. City & County of San Francisco*
  916 F.3d 749 (9th Cir. 2019) (en banc)..................................................................17

*Animal Legal Def. Fund v. Wasden*
  878 F.3d 1184 (9th Cir. 2018)......................................................................8, 12, 13

*Ashcroft v. Free Speech Coal.*
  535 U.S. 234 (2002) ...........................................................................................11, 16

*Askins v. U.S. Dep't of Homeland Sec.*
  899 F.3d 1035 (9th Cir. 2018)............................................................................8, 13

*Baca v. Moreno Valley Unified Sch. Dist.*
  936 F. Supp. 719 (C.D. Cal. 1996)........................................................................17

*Bartnicki v. Vopper*
  532 U.S. 514 (2001) ..............................................................................................16

*Bass v. First Pac. Networks, Inc.*
  219 F.3d 1052 (9th Cir. 2000)...............................................................................17

*Berger v. City of Seattle*
  569 F.3d 1029 (9th Cir. 2009)..................................................................................8

*Bible Club v. Placentia-Yorba Linda Sch. Dist.*
  573 F. Supp. 2d 1291 (C.D. Cal. 2008)..................................................................17

*Branzburg v. Hayes*
  408 U.S. 665 (1972) ................................................................................................8

*Brown v. Ent. Merchs. Ass'n*
  564 U.S. 786 (2011) ..............................................................................................16

*Brown v. Kemp*
  86 F.4th 745 (7th Cir. 2023)....................................................................................9

*Cal. First Amend. Coal. v. Calderon*
  150 F.3d 976 (9th Cir. 1998)....................................................................................8

*Carey v. Brown*
  447 U.S. 455 (1980) ...............................................................................................13

*Chestnut v. Wallace*
   947 F.3d 1085 (8th Cir. 2020) .................................................................................. 8

*City of Austin v. Reagan Nat'l Advert. of Austin, LLC*
   596 U.S. 61 (2022) ..................................................................................... 12, 13

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*
   657 F.3d 936 (9th Cir. 2011) .................................................................................. 14

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*
   82 F.4th 664 (9th Cir. 2023) .................................................................................. 16

*Galassini v. Town of Fountain Hills*
   No. CV-11-02097-PHX, 2011 U.S. Dist. LEXIS 128294 (D. Ariz. Nov. 3, 2011) .............. 17

*Gorbach v. Reno*
   219 F.3d 1087 (9th Cir. 2000) ................................................................................ 17

*Holt v. Hobbs*
   574 U.S. 352 (2015) ........................................................................................... 13

*IMDb.com Inc. v. Becerra*
   962 F.3d 1111 (9th Cir. 2020) ......................................................................... 13, 15

*Index Newspapers LLC v. U.S. Marshals Serv.*
   977 F.3d 817 (9th Cir. 2020) .................................................................................. 15

*Johnson v. Couturier*
   572 F.3d 1067 (9th Cir. 2009) ................................................................................ 17

*Keenan v. Superior Ct.*
   27 Cal. 4th 413 (2002) ......................................................................................... 10

*Leigh v. Salazar*
   677 F.3d 892 (9th Cir. 2012) .................................................................................. 8

*McCullen v. Coakley*
   573 U.S. 464 (2014) ..................................................................................... 7, 12, 15

*Meinecke v. City of Seattle*
   99 F.4th 514 (9th Cir. 2024) ....................................................................... 6, 14, 16, 17

*Mills v. Alabama*
   384 U.S. 214 (1966) ........................................................................................... 10

*People for the Ethical Treatment of Animals, Inc. v. N.C. Farm Bureau Fed'n, Inc.*
   60 F.4th 815 (4th Cir. 2023) .................................................................................. 9

*Police Dep't of Chi. v. Mosley*
   408 U.S. 92 (1972) ............................................................................................. 13

1

2

*Reed v. Town of Gilbert*
   576 U.S. 155 (2015) ............................................................................................ 12

3

*Rice v. Paladin Enters.*
   128 F.3d 233 (4th Cir. 1997).............................................................................. 11

4

*Sanchez v. City of Atherton*
   No. 22-cv-03106, 2023 U.S. Dist. LEXIS 3763 (N.D. Cal. 2023) ......................... 8

5

6

*Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*
   502 U.S. 105 (1991) ............................................................................... 9, 12, 16

7

*United States v. Playboy Ent. Grp.*
   529 U.S. 803 (2000) ........................................................................................... 13

8

9

*United States v. Stevens*
   559 U.S. 460 (2010) ............................................................................................. 9

10

*W. Watersheds Project v. Michael*
   869 F.3d 1189 (10th Cir. 2017).............................................................................. 9

11

12

*Winters v. New York*
   333 U.S. 507 (1948) ........................................................................................... 10

13

**STATUTES**

14

Alameda County Code
   § 10.40 ................................................................................................................. 4
   § 10.40.020 .............................................................................................. 5, 12, 13
   § 10.40.030 ......................................................................................................... 12
   § 10.40.030(A)–(B) .............................................................................................. 5
   § 10.40.050 ........................................................................................................... 5

Alameda County Ordinance No. 2023-31 ................................................................. 1

California Health & Safety Code § 41800 ........................................................... 6, 14

California Penal Code
   § 246.3 .......................................................................................................... 6, 14§
   374 ............................................................................................................... 6, 14
   § 415(2) ........................................................................................................ 6, 14
   § 594 ............................................................................................................ 6, 14

California Vehicle Code
   § 22500 ......................................................................................................... 6, 14
   § 23109 ......................................................................................................... 6, 14
   § 23152 ......................................................................................................... 6, 14

Oakland, Cal., Code §§ 10.74.010-10.74.090 (2023) ....................................... 6, 14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## OTHER AUTHORITIES

Alyssa Goard, *San Jose sideshow near Santana Row injures spectator, police officer*, NBC Bay Area (June 16, 2024), https://www.nbcbayarea.com/news/local/south-bay/santana-row-sideshow/3568247/ (last updated June 17, 2024, 4:47 AM) .......................................... 11

Caleb Lunetta, *Street Takeover Events Involving 200 People Thwarted Throughout San Diego Last Weekend*, San Diego Union-Tribune (June 5, 2024, 8:08 PM) (last updated June 6, 2024, 12:23 AM)................................................................................................... 14

Daniel González & Gustavo Solis, *A Human Smuggler, and the Wall That Will Make Him Rich*, Desert Sun (Sept. 27, 2017), https://perma.cc/ME7E-729W ......................................... 10

David Hernandez, *11 Arrested, 51 Cited During Street Takeovers in San Diego, Spring Valley*, San Diego Union-Tribune (Sept. 6, 2022, 8:45 PM), https://www.sandiegouniontribune.com/news/public-safety/story/2022-09-06/11-arrested-52-cited-during-street-takeovers-in-san-diego-spring-valley (last updated Sept. 7, 12:45 AM) .................................................................................................................. 15

Federal Rule of Civil Procedure 65(c) .......................................................................................... 17

John Ringer & Meghna Chakrabarti, *The Reality of the Drug Trade in San Francisco*, WBUR (Nov. 2, 2022), https://www.wbur.org/onpoint/2022/11/02/tenderloin-reality-of-the-drug-trade-in-san-francisco ........................................................................................... 10

Jose Fermoso, *Sharing our reporting on traffic safety and systems with high schoolers*, Oaklandside (May 17, 2023, 10:08 AM), https://oaklandside.org/2023/05/17/sharing-our-traffic-violence-reporting-castlemont-ousd-high-school-public-health/ ........................ 10

Karen Kucher, *Officers Seize 13 Vehicles, Arrest 2 in Connection with Street Takeover 'Sideshows' in San Diego*, San Diego Union-Tribune (May 2, 2024, 8:30 PM), https://www.sandiegouniontribune.com/news/public-safety/story/2024-05-02/officers-seize-vehicles-street-takeover-sideshows (last updated May 3, 12:30 AM).......................... 15

Kevin Ko, *San Francisco police chief promises accountability, but so far no arrests in Sunday sideshows*, CBS News Bay Area (June 11, 2024, 5:59 PM), https://www.cbsnews.com/sanfrancisco/news/san-francisco-police-chief-promises-accountability-but-no-arrests-so-far-in-weekend-sideshows/ .......................................... 11, 12

Vice, *Illegal Border Crossing in Mexico*, YouTube (May 31, 2012), https://perma.cc/7VJF-6SNP ............................................................................................... 10

Will Kerr, *Thieves Are Using Apple AirTags to Steal Cars. Here's How to Stop Them*, By Miles (June 10, 2022), https://perma.cc/M8AL-3S7M .......................................................... 10

## NOTICE OF MOTION AND MOTION

TO THE COURT, DEFENDANTS, AND ALL COUNSEL OF RECORD:

NOTICE IS HEREBY GIVEN that on September 5, 2024 at 1:30 p.m., or as soon thereafter as the matter can be heard before the Honorable Richard Seeborg, in Courtroom 3 on the 17th Floor of the San Francisco Division of the above-captioned court, Plaintiff Jose Antonio Garcia[1] will and hereby does move this Court to grant a preliminary injunction to enjoin Defendants and their officers, agents, servants, employees, attorneys, and anyone in active concert or participation with any of the foregoing persons (collectively, "County") from enforcing Alameda County Ordinance No. 2023-31 ("Ordinance"), codified at Chapter 10.40 of the Alameda County Code, against Fermoso in his capacity as a reporter. The Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the supporting declarations and exhibits thereto, all pleading and papers filed in this action, and such additional papers and arguments as may be presented at or in connection with the hearing.

Fermoso seeks a preliminary injunction prohibiting the County from enforcing the Ordinance against him for observing, recording, or reporting on sideshows or related preparations in his capacity as a reporter. The requested injunction would prohibit the County from citing, detaining, arresting, or seeking prosecution of Fermoso for an alleged violation of the Ordinance arising from his work as a reporter.

---

[1] Garcia writes under his maternal family surname, "Jose Fermoso," and will be referred to by this professional pen name in the remainder of the notice of motion, motion, and memorandum of points and authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     ISSUE PRESENTED**

Should the Court grant a preliminary injunction prohibiting the County from enforcing the Ordinance against Fermoso in his capacity as a reporter because he is likely to prevail on his claim that as applied to him the Ordinance is a content-based restriction on speech that violates the First Amendment by criminalizing journalism on matters of public concern?

**II.     INTRODUCTION**

Journalism is not a crime, yet the Ordinance makes it unlawful to observe, record, and report news of public concern. This Court's intervention is necessary to protect the First Amendment right to gather news and inform the public.

Jose Fermoso is the road safety beat reporter for *The Oaklandside*. To perform his job effectively, he needs to cover sideshows—controversial events where drivers take over intersections with their cars as they skid in circles while performing stunts. Previously, he has interviewed residents and business owners who are affected by the sideshows, detailed efforts to curb sideshows through enforcement and traffic safety measures, and performed data analysis to map sideshow hotspots. But Fermoso's readers need and want more firsthand news on sideshows to understand what is happening in their communities and make informed decisions about reforms.

Yet, in Alameda County, the Ordinance criminalizes the mere observation of "Sideshow Events" occurring on public streets. By punishing observation of sideshows, it inherently prohibits recording or reporting on them, but it does not prevent recording or reporting on other events or matters at the same time and place. Therefore, the Ordinance unconstitutionally punishes protected speech based on its content. Existing laws already prohibit reckless driving and other dangerous activities that often occur at sideshows. As other jurisdictions have done, the County could have bolstered enforcement of those laws or adopted an ordinance aimed at the promoters or organizers of sideshows, but this Ordinance does not do that. Instead, it criminalizes journalism.

As a result, Fermoso cannot do his job of effectively reporting on sideshows in Alameda County. Fearing arrest or prosecution under the Ordinance, he is unable to observe, record, and report firsthand at sideshows in the County. The Ordinance compels this self-censorship and

1   violates Fermoso's First Amendment right to gather and report the news. The dangers of

2   sideshows cannot justify restricting protected speech about them. In fact, those very dangers show

3   why sideshows are a matter of significant public concern. Without firsthand reporting and

4   recordings, County communities lack reliable information with which to advocate for real safety

5   reforms. An order prohibiting enforcement of the Ordinance is necessary to cure the irreparable

6   harm inherent in violating a reporter's First Amendment right to cover and report on events of

7   public concern occurring in a public place.

8   **III.     BACKGROUND**

9       **A.     Fermoso Covers Sideshows in Unincorporated Alameda County, Where
            Firsthand Reporting and Recording Offer Key Context to Readers.**

10

11          Fermoso is the road safety, transportation, and public health beat reporter for *The

12   Oaklandside*, a nonprofit journalism platform founded in June 2020, committed to rooting its

13   reporting in the needs and wants of diverse communities across the City of Oakland and

14   amplifying community voices. Fermoso Decl. ¶ 2. Fermoso reports on road safety matters both

15   within Oakland city limits, as well as in parts of unincorporated Alameda County, among other

16   areas, when issues important to Oakland communities arise outside the geographical boundaries of

17   the City. *Id.* ¶ 8. Fermoso has regularly reported on sideshows that have occurred in both Oakland

18   and unincorporated Alameda County. *Id.* ¶¶ 10, 15, 17. In the past two years, Fermoso has written

19   at least 16 articles that discuss incidents at a sideshow, sideshows generally, or sideshow-

20   prevention measures. *Id.* ¶ 10. Fermoso sees his role as neutrally informing Oakland communities

21   on the facts and circumstances of sideshows, so that they are empowered with the knowledge

22   necessary to understand the history of and problems associated with these events and may make

23   fact-based decisions regarding sideshow attendance, policing, and policy reform. *Id.* ¶ 11.

24          For instance, on May 30, 2023, Fermoso published an article in *The Oaklandside* entitled

25   "Map: These Oakland intersections are hotspots for sideshows." *Id.* ¶ 13 & Ex. 2. In reporting this

26   article, Fermoso and his co-author mapped every report of a sideshow made to Oakland police

27   from January 2019 to November 2022. *Id.* As reported in the article, Fermoso found that the

28   intersection most frequently taken over by sideshows, according to the reports to police, was

Keller Avenue and Skyline Boulevard, with 55 days of sideshow activity reported to police between January 2019 and November 2022. *Id.* ¶ 14 & Ex. 2.

The intersection of Keller Avenue and Skyline Boulevard is on the border between the City of Oakland and unincorporated Alameda County. *Id.* ¶ 15. Sideshows occurring at this intersection are visible, within 200 feet, from areas of unincorporated Alameda County. *Id.* Other sideshows Fermoso mapped for the article occurred directly in unincorporated Alameda County, including one day of sideshow activities reported at the intersection of Grass Valley Road and Skyline Boulevard, as well as at 7861 Redwood Road. *Id.* ¶ 17.

The public response to Fermoso's article was substantial. *Id.* ¶ 20. As of or about June 18, 2024, this article has been viewed approximately 13,000 times. *Id.* Since the publication of this article, Fermoso has planned to do on-site follow-up reporting on sideshows, due to the high level of community interest in the article and in understanding sideshows. *Id.* ¶ 21. He planned to personally observe, record, and report on the scene of sideshows in Oakland and unincorporated Alameda County, with particular interest in observing, recording, and reporting on sideshows at the most frequently reported intersection of Keller Avenue and Skyline Boulevard. *Id.* ¶ 22. Fermoso planned such observation to include recording and photographing the intersection and sideshow event from all angles, including from unincorporated Alameda County, within 200 feet of the intersection, to best capture images for purposes of newsgathering and reporting. *Id.* Quality audio and visual recordings and photographs are uniquely valuable to journalistic work because they help transport viewers to what is happening on the scene, especially in the context of breaking news. *Id.* ¶ 12.

**B.    The Ordinance Criminalizes Observing and thus Recording or Reporting on Sideshows and Prevents Fermoso from Critical Newsgathering.**

On August 1, 2023, the County Board of Supervisors passed the Ordinance, codified at Alameda County Code ("ACC") § 10.40, which, in relevant part, makes it a criminal offense for "any person to knowingly be a spectator at a sideshow event conducted on a public street or highway or off-street parking facility" and for "any person to knowingly be a spectator at the location of preparations for a sideshow event on a public street or highway or off-street parking

facility." ACC § 10.40.030(A)–(B). "Sideshow" means "an occasion where one or more persons, for the purpose of performing a street race or reckless driving exhibition for one or more spectator(s) either blocks or impedes traffic on a street or highway or impedes access to an off-street parking facility." ACC § 10.40.020. "Sideshow event" means "a sideshow, street race, or reckless driving exhibition." ACC § 10.40.020.

"Spectator" means "any person who is present at a sideshow event, or the site of the preparations for a sideshow event, for the purpose of viewing, observing, watching, or witnessing the sideshow event as it progresses." ACC § 10.40.020. "Spectator" may include but is not limited to "any person at the location of the sideshow event that may have participated in preparations and/or promoting the sideshow event." *Id.* A person is "present" at "a sideshow event if that person is within two hundred (200) feet of the location of the sideshow event, or within two hundred (200) feet of the site of the preparations for any sideshow event." ACC § 10.40.020.

The Ordinance imposes criminal sanctions, making a violation "a misdemeanor punishable by imprisonment not exceeding three months or by fine not exceeding one thousand dollars ($1,000.00) or by both." ACC § 10.40.050. By prohibiting being "present" at a sideshow for purposes of viewing, observing, watching, or witnessing the sideshow, the Ordinance effectively prohibits recording or reporting on the sideshow, because viewing, observing, watching, or witnessing an event is inherently necessary to recording or reporting on it. The Ordinance thus criminalizes journalism about matters of public concern related to sideshows by prohibiting reporters from the essential newsgathering of observing, recording, or reporting on them from anywhere within 200 feet of a sideshow or related preparations.

Despite Fermoso's plans to observe, record, and report on sideshows in person to expand upon his prior data-based sideshow reporting, he "canceled all future plans to report on-site at sideshows in the unincorporated areas of Alameda County" because he reasonably "feared citation, arrest, and criminal prosecution under the Ordinance" after he learned of its enactment. Fermoso Decl. ¶ 25. Nonetheless, observing, recording, and reporting on these events remains critical to the dissemination of information to Oakland and Alameda County communities, which

facilitates more widespread awareness of sideshows and associated problems, policing, and policy reform. *Id.* ¶ 12.

County Board of Supervisors President Nathan A. Miley and Defendant County Sheriff Yesenia Sanchez sent a letter to the County Board of Supervisors on June 6, 2023, that proposed the adoption of this Ordinance. Cappetta Decl. ¶ 2 & Ex. 3. The letter specified that the Ordinance would be targeted at spectators who "take video recordings of these events." *Id.* The letter also admits that "California law already prohibits drivers and passengers from engaging in Sideshow Events by criminalizing illegal street racing and illegal exhibitions of reckless driving." *Id.*

Existing laws also prohibit the conduct causing alleged problems associated with sideshows that are referred to the Ordinance's findings, such as the "discharge of firearms," Cal. Penal Code § 246.3; driving "under the influence of drugs and alcohol," Cal. Veh. Code § 23152; littering, Cal. Penal Code § 374; "vandalism," *id.* § 594; "harming or destroying" infrastructure or other property, *id.*; blocking or preventing access, Cal. Veh. Code § 22500; "burning rubber tires," *id.* § 23109; Cal. Health & Safety Code § 41800; and "noise pollution," Cal. Penal Code § 415(2). Additionally, other municipalities, including the City of Oakland, have adopted ordinances that prohibit the organizing or facilitating of sideshows without making it unlawful for journalists or others to observe, record, and report on them. *See* Oakland, Cal., Code §§ 10.74.010–10.74.090 (2023).

## IV.   LEGAL STANDARD

To obtain a preliminary injunction, Fermoso must show "(1) he is likely to succeed on the merits of his claim, (2) he is likely to suffer irreparable harm absent the preliminary injunction, (3) the balance of equities tips in his favor, and (4) a preliminary injunction is in the public interest." *Meinecke v. City of Seattle*, 99 F.4th 514, 521 (9th Cir. 2024) (quoting *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). When the government opposes an injunction, the third and fourth factors merge. *Id.*

## V.   ARGUMENT

On the undisputed facts, Fermoso is entitled to a preliminary injunction prohibiting enforcement of the Ordinance against him in his capacity as a reporter. Fermoso is likely to

1   succeed on the merits because the Ordinance violates the First Amendment by imposing a content-

2   based restriction on his protected speech of newsgathering, recording, and reporting on events of

3   public concern in a traditional public forum, and the County has the less restrictive alternative of

4   punishing the unlawful conduct associated with sideshows rather than punishing reporters for

5   exercising their First Amendment rights to observe and record them. Violations of the First

6   Amendment are irreparable harm as a matter of law, and the balance of equities and public interest

7   always favor protecting First Amendment rights.

8         **A.**      **The Ordinance Likely Violates the First Amendment as a Content-Based**
                         **Restriction on Protected Speech.**

9

10         The Court must follow "a unique likelihood-of-success standard in First Amendment

11   cases," under which "the moving party bears the initial burden of making a colorable claim that its

12   First Amendment rights have been infringed, or are threatened with infringement, at which point

13   the burden shifts to the government to justify the restriction on speech." *Id.* (quoting *Cal.*

14   *Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 478 (9th Cir. 2022))

15   (citing *Doe v. Harris*, 772 F.3d 563, 570 (9th Cir. 2014)). On the undisputed facts, the Ordinance

16   infringes Fermoso's First Amendment rights, and the County cannot carry its burden to justify

17   restricting his speech in his capacity as a reporter.

18         **1.**      **The Ordinance Restricts Access to a Traditional Public Forum and**
                         **Effectively Criminalizes the Protected Speech of Newsgathering and**

19                            **Recording or Reporting on Events of Public Concern.**

20         The Ordinance is subject to First Amendment scrutiny because it restricts access to a

21   traditional public forum and effectively criminalizes protected speech in the form of

22   newsgathering and recording and reporting on events of public concern in public places.

23         By punishing an observer's presence on "public streets and sidewalks" within 200 feet of a

24   sideshow or related preparations, the Ordinance "restricts access to traditional public fora and is

25   therefore subject to First Amendment scrutiny," even if it "says nothing about speech on its face."

26   *McCullen v. Coakley*, 573 U.S. 464, 476 (2014) (holding law that established 35-foot buffer zone

27   around reproductive health care facility violated First Amendment). "The protections afforded by

28

the First Amendment are nowhere stronger" than in a traditional public forum. *Berger v. City of Seattle*, 569 F.3d 1029, 1035–36 (9th Cir. 2009) (citations omitted).

The Ordinance also inherently criminalizes the protected speech of newsgathering and recording or reporting on sideshows. Newsgathering must "qualify for First Amendment protection," because "without some protection for seeking out the news, freedom of the press could be eviscerated." *Branzburg v. Hayes*, 408 U.S. 665, 681 (1972). Therefore, "newsgathering is an activity protected by the First Amendment." *Leigh v. Salazar*, 677 F.3d 892, 897 (9th Cir. 2012) (quoting *United States v. Sherman*, 581 F.2d 1358, 1361 (9th Cir. 1978)) (citing *Branzburg*, 408 U.S. at 681); *see also Cal. First Amend. Coal. v. Calderon*, 150 F.3d 976, 981 (9th Cir. 1998) (noting the "right of the press to gather news and information is protected by the First Amendment").

In addition, the acts of making recordings and gathering information are protected by the First Amendment. "The act of recording is itself an inherently expressive activity," and because "the recording process is itself expressive and is 'inextricably intertwined' with the resulting recording, the creation of audiovisual recordings is speech entitled to First Amendment protection as purely expressive activity." *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1203–04 (9th Cir. 2018) (quoting *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1062 (9th Cir. 2010)); *see also Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018) ("The First Amendment protects the right to photograph and record matters of public interest.") (citations omitted).

By punishing observation of sideshows, the Ordinance necessarily prohibits recording them, because observing is "a necessary prerequisite to recording." *Chestnut v. Wallace*, 947 F.3d 1085, 1090 (8th Cir. 2020); *see also Sanchez v. City of Atherton*, No. 22-cv-03106, 2023 U.S. Dist. LEXIS 3763, *14 (N.D. Cal. 2023) ("[G]iven that the Ninth Circuit protects the recording of police engaged in official duties, it follows that the act of observing them, which would necessarily be part of recording them, would also be protected."). The letter supporting the Ordinance confirms it is targeted at "video recordings" of sideshows. Cappetta Decl. ¶ 2 & Ex. 3.

1    As the Seventh Circuit confirmed, the "act of *making* an audio or audiovisual recording is

2  necessarily included within the First Amendment's guarantee of speech and press rights as a

3  corollary of the right to disseminate the resulting recording," and "[b]ecause the First Amendment

4  protects conduct and activities necessary for expression," it covers actions "essential to carry out

5  . . . protected monitoring and recording" of events in public, such as observing them from

6  sufficient "visual or physical proximity." *Brown v. Kemp*, 86 F.4th 745, 779 (7th Cir. 2023)

7  (quoting *ACLU v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012)).

8    The same is true for observation as a prerequisite to note-taking or other means of

9  gathering or recording information. Unsurprisingly, "scores of Supreme Court and circuit cases

10  apply the First Amendment to safeguard the right to gather information as a predicate to

11  speech. . . . The right to gather information plays a distinctly acute role in journalism. Firsthand

12  accounts, buttressed by video evidence, enhance accuracy and credibility in reporting and increase

13  transparency and reader trust, allowing the press 'to tell more complete and powerful stories.'"

14  *People for the Ethical Treatment of Animals, Inc. v. N.C. Farm Bureau Fed'n, Inc.*, 60 F.4th 815,

15  829 (4th Cir. 2023) (citations omitted); *see also W. Watersheds Project v. Michael*, 869 F.3d 1189,

16  1196 (10th Cir. 2017) ("An individual who photographs animals or takes notes about habitat

17  conditions is creating speech in the same manner as an individual who records a police

18  encounter."); *ACLU*, 679 F.3d at 595–96 (noting that "banning photography or note-taking at a

19  public event would raise serious First Amendment concerns; a law of that sort would obviously

20  affect the right to publish the resulting photograph or disseminate a report derived from the

21  notes."). Because it prohibits protected newsgathering or recording of sideshows located in

22  traditional public fora, the Ordinance is subject to First Amendment scrutiny.

23    **2.    The First Amendment Protects Speech About Unlawful Conduct.**

24    Although sideshows themselves may be illegal, the First Amendment protects speech

25  about crime, even if it describes or depicts actual crimes. *United States v. Stevens*, 559 U.S. 460,

26  469 (2010) (while government may enforce "prohibition of animal cruelty itself . . . *depictions* of

27  animal cruelty" are not excluded "from 'the freedom of speech' codified in the First

28  Amendment"); *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105,

116–18 (1991) (invalidating law that imposed financial burden on speech about crime); *Winters v. New York*, 333 U.S. 507, 508, 510 (1948) (holding publications "principally made up of criminal news, police reports, or accounts of criminal deeds, or pictures, or stories of deeds of bloodshed, lust or crime" were "as much entitled to the protection of free speech as the best of literature"); *Keenan v. Superior Ct.*, 27 Cal. 4th 413, 428 (2002) (striking down law that imposed financial burden on speech about crime).

Reporting on unlawful conduct informs the debate on whether certain conduct should be criminal, helps the public evaluate the government's enforcement policies and practices, and enables people to protect themselves. *See, e.g.*, Vice, *Illegal Border Crossing in Mexico*, YouTube (May 31, 2012), https://perma.cc/7VJF-6SNP; Daniel González & Gustavo Solis, *A Human Smuggler, and the Wall That Will Make Him Rich*, Desert Sun (Sept. 27, 2017), https://perma.cc/ME7E-729W; John Ringer & Meghna Chakrabarti, *The Reality of the Drug Trade in San Francisco*, WBUR (Nov. 2, 2022), https://www.wbur.org/onpoint/2022/11/02/tenderloin-reality-of-the-drug-trade-in-san-francisco; Will Kerr, *Thieves Are Using Apple AirTags to Steal Cars. Here's How to Stop Them*, By Miles (June 10, 2022), https://perma.cc/M8AL-3S7M.

Fermoso's reporting on sideshows serves these interests. He is a road safety reporter and sees his role as "neutrally informing Oakland communities on the facts and circumstances of sideshows," among other traffic dangers, "so that they are empowered with the knowledge necessary to understand the history of and problems associated with these events and may make fact-based decisions regarding sideshow attendance, policing, and policy reform." Fermoso Decl. ¶ 11. As Fermoso reported in May 2023, the impact of *The Oaklandside*'s reporting "was reflected in the budget priorities Councilmembers published last month. For the first time in years, all of them prioritized traffic safety by asking for barricades at intersections and sidewalks, hardened medians to stop sideshows, and faster repairs to potholed streets." Jose Fermoso, *Sharing our reporting on traffic safety and systems with high schoolers*, Oaklandside (May 17, 2023, 10:08 AM), https://oaklandside.org/2023/05/17/sharing-our-traffic-violence-reporting-castlemont-ousd-high-school-public-health/. Such reporting makes essential contributions to "the free discussion of governmental affairs." *Mills v. Alabama*, 384 U.S. 214, 218 (1966).

1    The Ordinance prohibits mere presence and observation of sideshows, not any "attempt,

2 incitement, solicitation, or conspiracy." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253 (2002).

3 In doing so, the Ordinance punishes recording or reporting on sideshows, which is protected

4 speech that cannot be made a crime:

5       News reporting, we can assume, no matter how explicit it is in its description or
        depiction of criminal activity, could never serve as a basis for aiding and abetting
6       liability consistent with the First Amendment. It will be self-evident in the context
        of news reporting, if nowhere else, that neither the intent of the reporter nor the
7       purpose of the report is to facilitate repetition of the crime or other conduct
        reported upon, but, rather, merely to report on the particular event, and thereby to
8       inform the public.

9 *Rice v. Paladin Enters.*, 128 F.3d 233, 266 (4th Cir. 1997).

10    Firsthand observation and recording from bystanders other than reporters are also critical

11 to inform the public and assist law enforcement in prosecuting crimes that occur at sideshows. For

12 example, NBC Bay Area recently reported on a sideshow in San Jose, including publishing a still

13 from a witness's firsthand recording that depicted a sideshow participant jumping on top of a

14 police patrol car. Alyssa Goard, *San Jose sideshow near Santana Row injures spectator, police*

15 *officer*, NBC Bay Area (June 16, 2024), https://www.nbcbayarea.com/news/local/south-

16 bay/santana-row-sideshow/3568247/ (last updated June 17, 2024, 4:47 AM). The article reports

17 that police are working to identify the suspects behind the sideshow to ensure they "are prosecuted

18 to the fullest extent the law allows" and indicates "San Jose police are asking if anyone has any

19 video" of "the sideshow to contact them." *Id.*

20    CBS News Bay Area reported on another June 2024 sideshow at which "[s]tunning video

21 of the incident showed the dangerous scene on the Embarcadero with cars doing donuts

22 surrounding a burning vehicle" while others "launch[ed] fireworks into the sky." Kevin Ko, *San*

23 *Francisco police chief promises accountability, but so far no arrests in Sunday sideshows*, CBS

24 News Bay Area (June 11, 2024, 5:59 PM), https://www.cbsnews.com/sanfrancisco/news/san-

25 francisco-police-chief-promises-accountability-but-no-arrests-so-far-in-weekend-sideshows/. San

26 Francisco Police Department Chief William Scott "urged the public to call 911 if they ever

27 witness a side show, while also asking witnesses to share videos with police to assist in

28

investigations." *Id.* Ironically, however, the Ordinance makes it a crime for bystanders to assist law enforcement in this way.

> **3.** **The Ordinance Is a Content-Based Restriction on Speech As It Prohibits Recording or Reporting on the Defined Topic of Sideshows.**

Under the First Amendment, the government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content," and any such restriction is "presumptively unconstitutional." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (quoting *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95 (1972)). That principle "applies with full force in a traditional public forum." *McCullen*, 573 U.S. at 477 (citing *Mosley*, 408 U.S. at 95). A law is content based "on its face" if it "defin[es] regulated speech by particular subject matter." *Reed*, 576 U.S. at 163. Such a law remains content based regardless of any "innocuous justification" or "benign motive" the government might have for enacting it. *Id.* at 165–66. "Innocent motives do not eliminate the danger of censorship presented by a facially content-based statute, as future government officials may one day wield such statutes to suppress disfavored speech." *Id.* at 167.

The Ordinance inherently "prohibits the recording of a defined topic"—sideshows and related preparations. *See Animal Legal Def. Fund*, 878 F.3d at 1204. It does not prohibit speech on other topics at the same time and place, such as architectural photography of a building, aesthetic photography of a sunset, or any photography, filming, or other speech unrelated to sideshows. ACC § 10.40.20. Therefore, it is "an 'obvious' example of a content-based regulation of speech because it 'defin[es] regulated speech by particular subject matter.'" *See id.* (alteration in original) (quoting *Reed*, 576 U.S. at 163) (citing *Stevens*, 559 U.S. at 468 (holding statute was content based when it prohibited "visual [and] auditory depiction[s] . . . depending on whether they depict conduct in which a living animal is intentionally harmed") (alterations in original)). By criminalizing recording or reporting on sideshows, the Ordinance imposes a powerful "disincentive only on speech of a particular subject." *See Simon & Schuster*, 502 U.S. at 116.

Although the Ordinance applies only in specified locations, ACC § 10.40.030, it is not purely "location-based" or "agnostic as to content." *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 69 (2022). Instead, it is content based because it singles out "specific

subject matter for differential treatment" by punishing the observing and recording of sideshows but not, for example, sunsets, buildings, or other landmarks or events. *Id.* (quoting *Reed*, 576 U.S. at 169); ACC § 10.40.20 (defining a "spectator" as a person present at a sideshow event "*for the purpose of* viewing, observing, watching, or witnessing *the sideshow event*") (emphasis added).

A law that targets speech based on topic or subject matter remains content based notwithstanding that it has a limited geographic scope. *Carey v. Brown*, 447 U.S. 455, 460–61 (1980) (holding that statute prohibiting residential picketing except for labor disputes was "based upon the content of the demonstrator's communication"); *Mosley*, 408 U.S. at 95 (holding that ordinance restricting picketing near schools except for labor disputes was content based because it "describes permissible picketing in terms of its subject matter"). Thus, the Ordinance is a content-based restriction on speech.

### 4. The Ordinance Fails Strict Scrutiny Because the County May Punish the Unlawful Conduct of Engaging in a Sideshow Without Restricting Protected Speech About Sideshows.

"Content-based restrictions on speech are subject to strict scrutiny and may only be upheld if they are the least restrictive means available to further a compelling government interest." *Askins*, 899 F.3d at 1044 (citation and quotation marks omitted). "The least-restrictive-means standard is exceptionally demanding." *Holt v. Hobbs*, 574 U.S. 352, 364 (2015) (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 728 (2014)). "If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." *United States v. Playboy Ent. Grp.*, 529 U.S. 803, 813 (2000) (citation omitted). "Even if a state intends to advance a compelling government interest, we will not permit speech-restrictive measures when the state may remedy the problem by implementing or enforcing laws that do not infringe on speech." *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1125 (9th Cir. 2020) (citations omitted).

While the County may have a compelling interest in preventing hazards caused by sideshows, it has the less restrictive alternative of punishing the unlawful conduct associated with such events rather than punishing reporters or others for exercising their First Amendment right to observe and record them. Therefore, the Ordinance fails strict scrutiny. *Animal Legal Def. Fund*, 878 F.3d at 1204–05 (holding content-based law which prohibited "recording of a defined topic"

1    on private property failed strict scrutiny where "owners can vindicate their rights" through

2    enforcing other laws).

3         As the County has acknowledged, "California law already prohibits drivers and passengers

4    from engaging in Sideshow Events by criminalizing illegal street racing and illegal exhibitions of

5    reckless driving." Cappetta Decl. ¶ 2 & Ex. 3. Other laws also prohibit the "discharge of firearms,"

6    Cal. Penal Code § 246.3; driving "under the influence of drugs and alcohol," Cal. Veh. Code. §

7    23152; littering, Cal. Penal Code § 374; "vandalism," *id.* § 594; "harming or destroying"

8    infrastructure or other property, *id.*; blocking or preventing access, Cal. Veh. Code § 22500;

9    "burning rubber tires," *id.* § 23109; Health & Safety Code § 41800; and "noise pollution," Penal

10    Code § 415(2).

11         In addition, the County may adopt a law that targets sideshows directly without punishing

12    protected speech. For example, the City of Oakland adopted an ordinance prohibiting the

13    organizing or facilitating of sideshows without making it unlawful for journalists or others to

14    observe, record, and report on them. *See* Oakland, Cal., Code §§ 10.74.010–10.74.090.

15         The County thus has readily available alternatives to address any dangerous conduct,

16    because "the penal laws" can be "used to punish such conduct directly" rather than punishing

17    reporters or others for engaging in protected speech. *Comite de Jornaleros de Redondo Beach v.*

18    *City of Redondo Beach*, 657 F.3d 936, 950 (9th Cir. 2011) (quoting *Village of Schaumburg v.*

19    *Citizens for a Better Env't*, 444 U.S. 620, 637 (1980)). Because the County has "several less

20    speech-restrictive alternatives to achieve public safety," the Ordinance violates the First

21    Amendment. *Meinecke*, 99 F.4th at 525.

22         Experience shows that such alternatives can be effective. For example, San Diego police

23    recently prevented "a coordinated event at multiple intersections," arresting the alleged

24    coordinator "on suspicion of conspiracy to commit felony vandalism, exhibition of speed, reckless

25    driving, facilitating an exhibition of speed and obstructing arrest." Caleb Lunetta, *Street Takeover*

26    *Events Involving 200 People Thwarted Throughout San Diego Last Weekend*, San Diego Union-

27    Tribune (June 5, 2024, 8:08 PM), https://www.sandiegouniontribune.com/news/public-

28    safety/story/2024-06-05/street-takeover-events-san-diego (last updated June 6, 2024, 12:23 AM).

Earlier this year, officers "seized 13 vehicles and arrested two people on suspicion of participating in illegal street takeover 'sideshow' events." Karen Kucher, *Officers Seize 13 Vehicles, Arrest 2 in Connection with Street Takeover 'Sideshows' in San Diego*, San Diego Union-Tribune (May 2, 2024, 8:30 PM), https://www.sandiegouniontribune.com/news/public-safety/story/2024-05-02/officers-seize-vehicles-street-takeover-sideshows (last updated May 3, 12:30 AM). Around Labor Day in 2022, "officers arrested 11 people and cited 51 involved with the events," and recently, "officers were able to prevent a group from putting on two sideshows after catching word the events were being planned." *Id.*; *see also* David Hernandez, *11 Arrested, 51 Cited During Street Takeovers in San Diego, Spring Valley*, San Diego Union-Tribune (Sept. 6, 2022, 8:45 PM), https://www.sandiegouniontribune.com/news/public-safety/story/2022-09-06/11-arrested-52-cited-during-street-takeovers-in-san-diego-spring-valley (last updated Sept. 7, 12:45 AM).

As these examples show, the proper response to unlawful conduct is to take action against those "who actually engage in such conduct, rather than to suppress legitimate First Amendment conduct as a prophylactic measure." *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 834 (9th Cir. 2020) (quoting *Collins v. Jordan*, 110 F.3d 1363, 1373 (9th Cir. 1996)); *see also, e.g., IMDb.com*, 962 F.3d at 1123 ("Rather than restrict truthful speech, the typical 'method of deterring unlawful conduct is to impose an appropriate punishment on the person who engages in it.'") (quoting *Bartnicki v. Vopper*, 532 U.S. 514, 529 (2001)).

Perhaps it might be easier to enforce a 200-foot perimeter against anyone observing or recording a sideshow than to arrest and prosecute individuals who are driving unlawfully or committing other crimes, but the First Amendment does not permit laws restricting speech simply because they are easier to enforce. *McCullen*, 573 U.S. at 495 (striking down buffer zone and noting that "[a] painted line on the sidewalk is easy to enforce, but the prime objective of the First Amendment is not efficiency.").

Therefore, "it does not matter" whether the Ordinance might "accomplish what it sets out to do" by deterring speech about sideshows, because an "unconstitutional statute that could achieve positive societal results is nonetheless unconstitutional." *IMDb.com*, 962 F.3d at 1128 (citations omitted). The County may not invoke the Ordinance's effect in suppressing speech

about sideshows as the interest justifying the Ordinance, because "this sort of circular defense can sidestep judicial review of almost any statute" and "[e]very content-based discrimination could be upheld by simply observing that the state is anxious to regulate the designated category of speech." *Simon & Schuster*, 502 U.S. at 120.

Although the government "may pass valid laws" prohibiting certain conduct, the "prospect of crime . . . by itself does not justify laws suppressing protected speech," and the "government may not prohibit speech" on the asserted ground that "it increases the chance an unlawful act will be committed 'at some indefinite future time.'" *Free Speech Coal.*, 535 U.S. at 245, 253 (quoting *Hess v. Indiana*, 414 U.S. 105, 108 (1973)); *cf. Bartnicki*, 532 U.S. at 529–30 (noting "it would be quite remarkable to hold that speech by a law-abiding possessor of information can be suppressed in order to deter conduct by a non-law-abiding third party.").

The Ordinance also fails strict scrutiny because it is both "seriously underinclusive" and "seriously overinclusive." *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 805 (2011). It is seriously underinclusive because it does not reach observing or recording sideshows by the participants or drivers themselves, nor does it reach observing or recording by remote means from more than 200 feet away, such as by use of a drone. It is seriously overinclusive because it prohibits observing, recording, or reporting on sideshows that has nothing to do with allegedly promoting or encouraging them, such as covering them in the media, protesting them, reporting them to law enforcement, or otherwise petitioning the government to take action. Accordingly, the Ordinance fails the strict scrutiny that applies to content-based restrictions on speech, and Fermoso is likely to prevail on his claim that the Ordinance violates the First Amendment as applied to him as a reporter covering sideshows.

### B. Fermoso Is Suffering Irreparable Harm, and the Balance of Equities and Public Interest Favor an Injunction Protecting His First Amendment Rights.

Fermoso is suffering irreparable harm because any "loss of First Amendment freedoms constitutes an irreparable injury" as a matter of law. *Meinecke*, 99 F.4th at 526; *see also, e.g.,* *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 694 (9th Cir. 2023) ("It is axiomatic that '[t]he loss of First Amendment freedoms, for even minimal

periods of time, unquestionably constitutes irreparable injury.'") (quoting *Roman Cath. Diocese v. Cuomo*, 592 U.S. 14, 19 (2020)); *Am. Beverage Ass'n v. City & County of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) (en banc) ("Because Plaintiffs have a colorable First Amendment claim, they have demonstrated that they likely will suffer irreparable harm.").

"The balance of equities and public interest favor" an injunction because "[i]t is always in the public interest to prevent the violation of a party's constitutional rights" and when a party raises "serious First Amendment questions, that alone compels a finding that the balance of hardships tips sharply in [its] favor." *Meinecke*, 99 F.4th at 526 (citation and quotation marks omitted). Although the government "has an interest in maintaining public order," even "undeniably admirable goals . . . must yield" to the Constitution, especially when the County has "other means of vindicating its interests without restricting [Fermoso's] speech." *Id.*

**C.    No Bond Should be Required.**

The Court has discretion "as to the amount of security required, *if any*," under Federal Rule of Civil Procedure 65(c), and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (citation and quotation marks omitted). It is proper to waive the bond requirement in free speech cases, because "to require a bond would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996) (citation omitted).

The County would incur no compensable costs or damages even if the injunction were later dissolved. Parties may not recover attorney fees arising from issuance of an injunction. *Bass v. First Pac. Networks, Inc.*, 219 F.3d 1052, 1055–56 (9th Cir. 2000). Therefore, no bond should be required. *Gorbach v. Reno*, 219 F.3d 1087, 1092 (9th Cir. 2000) (upholding denial of bond in absence of any costs or damages suffered by the government arising from a wrongful injunction); *Galassini v. Town of Fountain Hills*, No. CV-11-02097-PHX, 2011 U.S. Dist. LEXIS 128294, at *19 (D. Ariz. Nov. 3, 2011) (waiving bond in First Amendment case because it is "difficult to envision how Defendants would incur compensable costs or damages"); *Bible Club v. Placentia-*

1  *Yorba Linda Sch. Dist.*, 573 F. Supp. 2d 1291, 1302 n.6 (C.D. Cal. 2008) ("Given that this case

2  involves the probable violation of the Bible Club's First Amendment rights, and that the damages

3  to the District of issuing this injunction seem minimal, if they exist at all, the Bible Club need not

4  post a bond."). Accordingly, the Court should require no bond in this case.

5  **VI.   CONCLUSION**

6       For the foregoing reasons, Fermoso respectfully requests that the Court grant his motion

7  for a preliminary injunction prohibiting the County from enforcing the Ordinance against him for

8  observing, recording, or reporting on sideshows or related preparations in his capacity as a

9  reporter.

10  Dated:  July 23, 2024

11                          FIRST AMENDMENT COALITION

12                      By  _____
                                            */s/ David Loy*
13                              DAVID LOY
                                ANN CAPPETTA
14                              Attorneys for Plaintiff
                                JOSE ANTONIO GARCIA
15

16

17

18

19

20

21

22

23

24

25

26

27

28