UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE ANTONIO GARCIA,<br><br>    Plaintiff,<br><br>    v.<br><br>COUNTY OF ALAMEDA, et al.,<br><br>    Defendants. | Case No. 24-cv-03997-RS<br><br>**ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION** |

# I. INTRODUCTION

Plaintiff Jose Antonio Garcia, also known as Jose Fermoso ("Fermoso"), is a reporter for *The Oaklandside* who regularly covers sideshows—events where reckless drivers entertain crowds with dangerous stunts on public streets. By their nature, sideshows pose a significant threat to public safety. In the Bay Area, they sometimes also involve gun violence, substance use, looting, and arson. To deter them from happening, defendant Alameda County adopted a local ordinance which criminalizes participating in sideshows as a spectator. Fermoso subsequently brought a First Amendment challenge against the County and its sheriff, defendant Yesenia Sanchez (collectively, the "County"), seeking injunctive relief, a declaration that the ordinance is unconstitutional on its face or as applied to his reporting, nominal damages, and attorneys' fees and costs. Fermoso has since moved for a preliminary injunction to prevent the defendants from enforcing the ordinance against him in his capacity as a reporter. The defendants oppose relief, arguing that the ordinance addresses non-expressive conduct and thus does not implicate the First Amendment. For the reasons explained below, Fermoso's preliminary injunction motion is denied.

# II. BACKGROUND

In August 2023, the Alameda County Board of Supervisors passed an ordinance to address sideshows. *See* Alameda County Code ("ACC") § 10.40. The ordinance states that "[s]ideshows

cause significant damage to unincorporated Alameda County infrastructure including by harming or destroying intersection markings, street signs, poles, and other equipment." *Id.* § 10.40.10. It also states that sideshows "create an unsafe environment for the communities in which they occur" due to the reckless driving and firearm use often associated with them. *Id.* Moreover, sideshows "drastically impact the quality of life" in nearby communities by causing damage to public and private property, generating air and noise pollution, and attracting unmanageable crowds. *Id.*

Because of the need to address these dangers, the ordinance imposes criminal sanctions on "any person" who "knowingly [is] a spectator at a sideshow event conducted on a public street or highway or off-street parking facility." ACC §§ 10.40.030(A)–(B), 10.40.050. The ordinance further specifies that a "spectator" is "any person who is present at a sideshow event, or the site of the preparations for a sideshow event, for the purpose of viewing, observing, watching, or witnessing the sideshow event as it progresses," with "present" defined to mean within 200 feet of the event location. ACC § 10.40.020. A sideshow is defined as "an occasion where one or more persons, for the purpose of performing a street race or reckless driving exhibition for one or more spectator(s) either blocks or impedes traffic on a street or highway or impedes access to an off-street parking facility." *Id.* "Sideshow event" means "a sideshow, street race, or reckless driving exhibition." *Id.* According to the County sergeant who helped author the ordinance, no sideshows have occurred on unincorporated County lands since it was adopted, and no related arrests or citations have issued. Culley Decl. ¶¶ 19–20, Dkt. No. 22-1.

Upon learning of the new ordinance, Fermoso canceled all future plans to report on-site at sideshows in the County because he "feared citation, arrest, and criminal prosecution." Fermoso Decl. ¶ 25, Dkt. No. 15–1. This case followed.

### III. LEGAL STANDARD

To secure a preliminary injunction, a plaintiff must establish the four factors set out in *Winter v. Nat. Res. Def. Council, Inc.* 555 U.S. 7, 20 (2008): that "(1) he is likely to succeed on the merits of his claim, (2) he is likely to suffer irreparable harm absent the preliminary injunction, (3) the balance of equities tips in his favor, and (4) a preliminary injunction is in the public interest."

*Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). The first factor is a threshold question; "a court need not consider the other factors if a movant fails to show a likelihood of success on the merits." *Id.* (quoting *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017)).

## IV. DISCUSSION

The First Amendment states that "Congress shall make no law . . . abridging the freedom of speech, or of the press[.]" Via its application to the states via the Fourteenth Amendment, "[t]he First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002) (citation omitted).

### A. Standing

"In order to invoke the jurisdiction of the federal courts, a plaintiff must establish 'the irreducible constitutional minimum of standing,' consisting of three elements: injury in fact, causation, and a likelihood that a favorable decision will redress the plaintiff's alleged injury." *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). The injury in fact must constitute "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citation omitted). In First Amendment cases, plaintiffs may satisfy this requirement by "alleg[ing] an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute [or ordinance], and . . . a credible threat of prosecution thereunder." *Lopez*, 630 F.3d at 785 (citation omitted); *see also Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 487 (9th Cir. 2024).

The County argues that Fermoso fails to allege imminent harm because law enforcement is aware of no sideshows in the County during the 13 months since the ordinance took effect. The ordinance has never been enforced, and Fermoso has not claimed to have attended a sideshow in order to report on it—in fact, his reporting has tended to rely on data and content provided by others. In short, the County says, Fermoso's alleged injury is too speculative.

The County's standing argument is unavailing. First, Fermoso has declared under penalty of perjury that, until learning of the ordinance, he planned to observe future sideshows in

*Order Denying Motion for Preliminary Injunction*
CASE NO. 24-cv-03997-RS

3

unincorporated Alameda County from within a 200 feet radius so as to best capture audio and visual recordings of the event—conduct that is "arguably affected with a constitutional interest." *Lopez*, 630 F.3d at 785.  Second, there is a credible threat that his planned actions would expose him to prosecution under the ordinance; the County has not disavowed enforcement against journalists, and the fact that it has not yet prosecuted anyone does not foreclose it from prosecuting Fermoso if given the chance.  Fermoso's fear of prosecution is therefore neither imaginary nor wholly speculative.  This matter presents an Article III case or controversy.

### B. Conduct vs. Expression

In arguing that the ordinance's restriction of his journalistic ability to observe sideshows violates his First Amendment rights, Fermoso bears an initial burden of "demonstrat[ing] that the First Amendment even applies."  *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984).  To do so, Fermoso contends that the ordinance restricts expression (*i.e.*, recording) in a traditional public forum (*i.e.*, streets and sidewalks) based on content (*i.e.*, sideshows).  The County counters by arguing that the ordinance should receive rational basis review as a generally applicable regulation of conduct (*i.e.*, spectating at a sideshow) that only marginally burdens expression.  In the alternative, even if the First Amendment applies, the defendants say the ordinance survives intermediate scrutiny as a content-neutral time, place, and manner restriction, narrowly tailored to serve a compelling governmental interest, that leaves open ample alternative channels for communication.  Fermoso mantains, however, that the regulation is content-based and fails to survive the strict scrutiny that content-based laws must satisfy.

Fermoso fails to carry his threshold burden of establishing that the ordinance regulates any speech cognizable under the First Amendment.  The First Amendment only applies to conduct regulations if "conduct with a 'significant expressive element' drew the legal remedy" or if "the [statute] has the inevitable effect of 'singling out those engaged in expressive activity.'"  *Int'l Franchise Ass'n v. City of Seattle*, 803 F.3d 389, 408 (9th Cir. 2015) (quoting *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706-07 (1986)).  Neither necessary condition is present here.

### *1. Directly Regulated Conduct*

The "first inquiry is to determine what precise conduct 'drew the legal remedy' of the [c]hallenged [regulation]." *B & L Prods., Inc. v. Newsom*, 104 F.4th 108, 113 (9th Cir. 2024) (quoting *Arcara*, 478 U.S. at 706–07). There is no dispute on this front; both parties agree that the County ordinance proscribes "knowingly be[ing] a spectator at a sideshow event," with "spectator" defined as being "present [*i.e.*, within 200 feet] . . . for the purpose of viewing, observing, watching, or witnessing the sideshow event as it progresses." ACC ¶§ 10.40.020.

The dispute instead centers on whether the spectating conduct that drew the legal remedy has a significant expressive element. Fermoso contends that, by outlawing the observation of activity that occurs on public streets and sidewalks, the regulation necessarily restricts access to a traditional public fora for expression, even if it "says nothing about speech on its face." *McCullen v. Coakley*, 573 U.S. 464, 476 (2014). The County, however, contends that the ordinance regulates participatory conduct that only incidentally affects speech.

A useful analogue to this case is *HomeAway.com, Inc. v. City of Santa Monica*, 918 F.3d 676 (9th Cir. 2019). There, a local ordinance barred online platforms from renting homes that were not licensed and listed on a public registry. *Id.* at 680. Several platforms challenged the ordinance on First Amendment grounds, but the district court concluded that the ordinance "regulates conduct" that "does not have such a significant expressive element' as to draw First Amendment protection." *Id.* at 684. The Ninth Circuit agreed, observing that the ordinance "regulate[d] nonexpressive conduct—namely, booking transactions—not speech." *Id.* at 685. This was true notwithstanding the fact that, in regulating bookings, the ordinance necessarily restricted the speech that comprised them. Nor did it matter that the Supreme Court had recently declared online social media platforms to be "the modern public square," *Packingham v. North*

*Carolina*, 582 U.S. 98, 107 (2017), akin to a public forum.

Likewise here, the County's ordinance is plainly directed at conduct that "impos[es] incidental burdens on speech" only.  *HomeAway.com, Inc.*, 918 F.3d at 686 (citation omitted).  Similar to regulations on serving alcohol, setting outdoor fires, selling firearms, and operating a tattoo parlor in a pandemic, a regulation about spectating at a sideshow does not address conduct with a significant expressive element.  *See, e.g.*, *Talk of the Town v. Dep't of Fin. & Bus. Servs.*, 343 F.3d 1063, 1069–70 (9th Cir. 2003) ("[T]he [ordinance] that bars the consumption of alcohol in establishments that lack valid liquor licenses [] in no way can be said to regulate conduct containing an element of protected expression."); *See also R.A.V. v. City of St. Paul*, 505 U.S. 377, 385 (1992) ("[N]onverbal expressive activity can be banned because of the action it entails, but not because of the ideas it expresses—so that burning a flag in violation of an ordinance against outdoor fires could be punishable, whereas burning a flag in violation of an ordinance against dishonoring the flag is not."); *B & L Productions, Inc. v. Newsom*, 104 F.4th 108, 114 (9th Cir. 2019) (upholding regulation on firearm sales); *Mitchell v. Newsom*, 509 F. Supp. 3d 1195, 1201 (C.D. Cal. 2020) (upholding stay-home order as applied to tattoo parlor).

Fermoso aims to distinguish this line of cases by highlighting the extent to which the County ordinance regulates conduct in a public forum and exposes newsmen like him to criminal prosecution.  True, none of the above cases involved conduct on a public sidewalk.  *B&L Productions* did involve a publicly operated fairground, but the conduct in that case (*i.e.*, contracting to purchase a gun) was less expressive than the conduct in which Fermoso purports to engage (*i.e.*, recording and publishing videos and news reports about sideshows).  Moreover, a fairground is hardly a public sidewalk, which the Supreme Court has identified as perhaps the quintessential public forum.  *See U.S. v. Kokinda*, 497 U.S. 720, 726–27 (1990) (distinguishing enforcement of anti-soliciting law, as applied to a post office sidewalk, from enforcement in public

streets and parks "that ha[ve] been traditionally open to the public for expressive activity"); *see also Snyder v. Phelps*, 562 U.S. 443, 456 (2011) ("'We have repeatedly referred to public streets as the archetype of a traditional public forum,' noting that '"[t]ime out of mind"' public streets and sidewalks have been used for public assembly and debate.'" (quoting *Frisby v. Schultz*, 487 U.S. 474, 480 (1988))).

Ultimately, however, Fermoso's distinctions are unpersuasive. The fact that an ordinance applies in a particularly expression-prone place does not transform the non-expressive conduct that it regulates into conduct with a significant expressive element. For example, Federal law prohibits knowingly attending, sponsoring, or exhibiting a cockfight. *See* 7 U.S.C. § 2156(a), *see also Hernández-Gotay v. U.S.*, 985 F.3d 71, 80 (1st Cir. 2021) (rejecting First Amendment challenge by Puerto Rican cockfighting sponsors). If the government can constitutionally prohibit attending or sponsoring the fight, *see id.*, that prohibition becomes no less constitutional simply because two roosters do battle on a sidewalk. If the opposite were true, all manner of local prohibitions could be invalidated by simply moving proscribed conduct from the shadows to the streetcorners.

Fermoso's journalistic intent does not change the analysis—"[t]he right to speak and publish does not carry with it the unrestrained right to gather information." *Zemel v. Rusk*, 381 U.S. 1, 16–17 (1965). In that case, the Supreme Court explained in dicta that:

> . . . there are few restrictions on action which could not be clothed by ingenious argument in the garb of decreased data flow. For example, the prohibition of unauthorized entry into the White House diminishes the citizen's opportunities to gather information he might find relevant to his opinion of the way the country is being run, but that does not make entry into the White House a First Amendment right."

*Id.* So, too here—the prohibition on spectating at sideshows diminishes Fermoso's opportunities to gather information about them, but that does not make witnessing them a First Amendment right. As the Ninth Circuit recently put it: "[T]he First Amendment right to gather news within legal bounds does not exempt journalists from laws of general applicability." *Animal Legal*

*Order Denying Motion for Preliminary Injunction*
CASE NO. 24-cv-03997-RS

7

*Defense Fund v. Wasden*, 878 F.3d 1184, 1190 (9th Cir. 2018) (hereafter "*ALDF*") (upholding state law criminalizing misrepresentation to obtain records but finding unconstitutional a ban on video recordings of an animal production facility's operations).

To be sure, the Ninth Circuit has also recognized the "First Amendment right to film matters of public interest." *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995). "The act of recording is itself an inherently expressive activity." *ALDF*, 878 F.3d at 1203. In *ALDF*, the Ninth Circuit characterized an Idaho law banning recording in animal production facilities as an "obvious" example of content-based speech regulation, *id.* at 1204, even where the setting, unlike the public sidewalk here, was not generally open to the public.

Yet this case does not involve an anti-recording component—the challenged ordinance does not specifically prohibit the conduct of *recording*. Its focus on the conduct of *knowingly being present for the purpose of observing a sideshow* makes it less about speech production and more about locational activity. In this regard it is not unlike all manner of standard laws that restrict conduct in public areas for safety reasons, notwithstanding their impact on those who would engage in such conduct in order to speak. *See, e.g.*, *Raef v. App. Div. of Super. Ct.*, 240 Cal. App. 4th 1112, 1119 (2015) (upholding statute penalizing "reckless driving . . . committed with the intent to capture an image . . . of another person for a commercial purpose"). Because observing a sideshow from within 200 feet is not conduct with a significantly expressive element, "[i]t is clear that the ordinance was not motivated by a desire to suppress speech." *Int'l Franchise Ass'n*, 803 F.3d at 409. The First Amendment therefore does not apply, and Fermoso fails to show a likelihood of success on the merits.

### 2. Inevitable Effect

The other way that Fermoso could show First Amendment applicability to this regulation of conduct is if he demonstrates that the ordinance "singles out those engaged in expressive activity." *See, e.g.*, *Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 581 (1983) (finding that a tax on paper and ink purchases singled out newspapers and thus violated the First Amendment). That Fermoso does not make this argument underscores its futility; the statute applies to all who gather within 200 feet of a sideshow, with no "singling out"

as occurred in the *Minneapolis Star* case. At any rate, even if this argument might hold water, Fermoso's failure to raise it means that the applicability of the First Amendment hinges, in this litigation, on whether spectating at a sideshow has a significant expressive element as discussed *supra*. Because it does not, the First Amendment does not apply, and Fermoso necessarily fails to show a likelihood of success on the merits of his First Amendment claim.

### C. The Ordinance Is Content-Neutral And Satisfies Intermediate Scrutiny

In the alternative, even if the First Amendment *were* deemed applicable to the challenged ordinance, Fermoso still fails to show a likelihood of success on the merits of his claim.

Were the First Amendment to be triggered here, the question would become whether the ordinance is a content-neutral or content-based restriction. *See Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 166 (2015). If it is content-neutral, it receives intermediate scrutiny, which requires that the ordinance be narrowly tailored to serve a compelling governmental interest and that it leaves open ample alternative channels for communication of the information. *See Ward v. Rock Against Racism*, 491 U.S. 781, 798–800 (1989).[1] If, however, the regulation is content-based, it receives strict scrutiny, which requires that the ordinance be the least restrictive means available to further a compelling government interest. *See U.S. v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000).

#### *1. Content-Neutral vs. Content-Based*

Fermoso sees the ordinance as content-based because it applies to observations of sideshows only—and thus restricts observational recordings based on the content they depict. In other words, it "targets only the subject of sideshows and inherently prohibits recording or reporting on that topic but not others such as buildings or sunsets." Reply Br. at 7–8. As a result, he argues strict scrutiny should apply. The County, however, posits that the ordinance does not draw content-based distinctions nor rely on speech-content for a justification: it does not address "what [plaintiffs] say" but rather "where they say it." Opp. Br. at 20.

---

[1] This intermediate scrutiny test is indistinguishable from the test articulated in *United States v. O'Brien*, 391 U.S. 367, 370 (1968). *See United States v. Swisher*, 811 F.3d 299, 312 & n.7 (9th Cir. 2016).

*Order Denying Motion for Preliminary Injunction*
CASE NO. 24-cv-03997-RS

The ordinance is content-neutral. Unlike the law at issue in *ALDF*, the County ordinance is concerned with the location and purpose of an actor, not whether that actor speaks (and certainly not the content of any speech that occurs). In *Reed*, the Supreme Court described content-based laws as those which "appl[y] to particular speech because of the topic discussed or the message expressed." 576 U.S. 155, 163 (2015). The ordinance here applies to particular speech because of the associated conduct, no matter the message any related speech might communicate. In other words, the statute "applies equally to silent spectators, spectators speaking or carrying signs addressing any topic and conveying any message, and spectators like [Fermoso] who are preparing to speak in the future." Opp. Br. at 21. In this way, it closely resembles the content-neutral regulation in *McCullen*, which applied based on location rather than message and which the Supreme Court reviewed under an intermediate scrutiny standard. 573 U.S. at 479–80.

### 2. *Intermediate Scrutiny*

#### a. Public Safety As a Compelling Governmental Interest

Fermoso does not challenge the County's argument that public safety is a compelling governmental interest. *See* Reply Br. at 10–12. Nor could he. As the County points out, public safety is a well-recognized compelling governmental interest. *See, e.g.*, *Menotti v. City of Seattle*, 409 F.3d 1113, 1143 n.57 (9th Cir. 2005) (city had compelling interest in safety and security); *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 947–48 (9th Cir. 2011) (city had compelling interests in traffic safety and flow); *see also Ward*, 491 U.S. at 796 (city had substantial interest in protecting residents from unwelcome noise).

#### b. Narrowly Tailored

Fermoso's main argument against upholding the ordinance through intermediate scrutiny is his contention that it is not narrowly tailored. Claiming that the County has abundant alternative means to prevent sideshows, he points to pre-existing laws against reckless driving, vandalism, harming or destroying infrastructure, burning rubber tires, causing noise pollution, and discharging firearms. He also cites to an Oakland city ordinance that prohibits organizing or facilitating sideshows rather than mere spectating. *Id.* (citing Oakland, Cal., Code §§ 10.74.010–

10.74.090). That ordinance addresses those who "knowingly organize, promote, instigate, assist, facilitate, aid, or abet" a sideshow, Oakland Cal., Code §10.74.040—a list of verbs that seem less likely to sweep in the stray reporter than the at-issue County ordinance, which captures those knowingly present for the purpose of "viewing, observing, watching, or witnessing the sideshow event." ACC § 10.40.020.

Intermediate scrutiny does not require that a regulation be the least restrictive means of furthering state's interest. *Ward*, 491 U.S. at 798–99. Rather, the ordinance is narrowly tailored if it does not "burden substantially more speech than is necessary to further the government's legitimate interest." *Id.* at 799–800 (emphasis added). A ban on spectating within 200 feet of a sideshow presents merely an incidental burden on speech—not a burden that is far greater than necessary. Indeed, the regulation features several limiting factors that avoid a greater-than-necessary impingement on speech. For one thing, it only applies to "knowing" spectators, thus avoiding sweeping in innocent bystanders. For another, its 200-foot boundary would allow Fermoso to make news about the sideshow from a safer distance that is less likely to encourage the event itself or any related illegality.

Moreover, unlike the municipality in *Comite de Jornaleros*, which had other laws available to address its stated interests, *see* 657 F.3d at 949, Alameda County has no alternative means of deterring spectating: all the laws that Fermoso cite require additional illegality (*e.g.*, being a reckless driver, firing a gun, exhibiting signs of public intoxication). They would be ineffective against the spectator who does nothing more than show up and cheer. But such a spectator is a causal contributor to the dangers that the County seeks to prevent, including the risk of injury to the spectators themselves. *See* Culley Decl. 15–16. Because the County "demonstrate[s] that alternative measures that burden substantially less speech would fail to achieve the government's interests," *McCullen*, 573 U.S. at 495, the ordinance is sufficiently narrowly tailored to satisfy intermediate scrutiny.

### c. Alternative Channels of Communication

Fermoso does not present a discrete argument about whether the ordinance leaves open

ample alternative channels for communicating information. This is conspicuous, given that the County offered an entire page of analysis to explain that he "may venture inside a 200-foot radius of a sideshow to interview residents, passersby, spectators, or even drivers, and to record these interviews," Opp. Br. at 27–28, so long as he is not within that radius for the purpose of spectating the sideshow itself. He may also obtain videos and photos from beyond the 200-foot radius; obtain videos from sources within the 200-foot radius; record the aftermath of sideshows; and rely on public data and post-incident interviews, as he has in previous sideshow-focused reports. *Id.* Fermoso's failure to rebut these arguments waives the issue; the ordinance leaves open ample alternative channels of communication.

## V. CONCLUSION

The County ordinance does not restrict conduct with a significant expressive element and therefore does not trigger First Amendment protections. Even if it did implicate freedom of speech or of the press, the ordinance is content-neutral and withstands intermediate scrutiny. Because of these conclusions, Fermoso is unlikely to succeed on the merits of his claim. The motion for a preliminary injunction is denied.

**IT IS SO ORDERED**.

Dated: October 11, 2024

_____
RICHARD SEEBORG
Chief United States District Judge